BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | |
|---|---|
| IN RE: FTX CRYPTOCURRENCY EXCHANGE COLLAPSE LITIGATION | MDL Docket # 3076 |

**REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR TRANSFER OF ACTIONS TO THE SOUTHERN DISTRICT OF FLORIDA, PURSUANT TO 28 U.S.C. § 1407 FOR COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS**

Petitioners file this Reply in further support of their Motion to Transfer and Consolidate all Related Actions (the Insiders,[1] Brand Ambassadors and Influencers,[2] Professional Servicers[3] and Financiers[4]) all stemming from the collapse of FTX, to the Southern District of Florida.

## BACKGROUND

Since Petitioners initially moved for consolidation on February 10, 2023, several notable changes have occurred in circumstances surrounding the FTX collapse.

First, after many weeks of attempting service, 17 of the 18 FTX Defendants have now all been served in the *Garrison* (first-filed) matter and The Honorable K. Michael Moore today granted an extension until April 17, 2023, to serve Defendant Shaquille O'Neil (after Petitioners presented evidence he has been evading service) and ordered a Scheduling Conference be held at the earlier of 20 days after Mr. O'Neil's service or May 8, 2023.

---

[1] Defendants Bankman-Fried, Trabucco, Ellison, Singh, Wang, and Friedberg.
[2] Defendants Brady, Bundchen, Curry, Golden State Warriors, O'Neal, Haslem, Ortiz, Lawrence, Ohtani, Osaka, David, O'Leary, Paffrath, Stephan, Jikh, Singh, Jung, Lefebvre, Nash, Armstrong, Kullberg, and Creators Agency, LLC.
[3] Defendants Armanino, LLP, Prager Metis CPAs, LLC, Fenwick & West LLP.
[4] Defendants Silvergate Bank, Silvergate Capital Corporation, Sequoia Capital Operations, LLC, Paradigm Operations LP, Signature Bank, Deltec Bank and Trust Company Limited, Farmington State Bank d/b/a Moonstone Bank, Temasek Holdings (Private) Limited, Softbank Vision Fund (AIV M2) L.P., Ribbit Capital, L.P., Altimeter Capital Management, LP, Multicoin Capital Management LLC, Tiger Global Management, LLC, Sino Global Capital Limited, Softbank Group Corp., Thoma Bravo, LP, Alan J. Lane.

*In re: FTX Cryptocurrency Exchange Collapse Litigation*

Second, the legal landscape has expanded. Additional cases from the same underlying nexus of facts have been filed (in the Southern District of Florida, against the FTX Influencers) and additional previously-filed cases have been tagged for potential inclusion in this MDL. All such currently pending cases are reflected, on the updated Schedule of Actions, attached hereto as **Exhibit A** (the "Related Actions"). The Defendants in those cases fall into four broad groups: Insiders, Brand Ambassadors, Professional Services, and Financiers[5].

Third, two main Financier Defendants have ceased operations. On March 8, 2023, Silvergate Bank announced that it would wind down operations and liquidate. On March 12, 2023, the New York State Department of Financial Services closed Signature Bank, and the Federal Deposit Insurance Corporation was appointed receiver. *See* Dkt. 57 at 2-4.

Should the Panel grant this Petition and bring all related FTX cases together within this MDL, Petitioners submit the Transferee Court may implement separate tranches (if necessary) to avoid burdening the Related Actions with the Silvergate Bank and Signature Bank closure-related issues. *See, e.g., In re January 2021 Short Squeeze Trading Litig.,* S.D. Fla. Case No. 1:21-md-02989 (The Honorable Chief Judge Cecelia M. Altonaga) (implementing tranches with separate controlling complaints). Alternatively, should the Panel find including these Defendants in liquidation would not advance the objectives of § 1407, Petitioners support excluding these Financier Defendants from the MDL. *See In re W. Elec. Co., Inc. Semiconductor Pat. Litig.*, 415

---

[5] Defendants Silvergate Bank, Silvergate Capital Corporation, Sequoia Capital Operations, LLC, Paradigm Operations LP, Signature Bank, Deltec Bank and Trust Company Limited, Farmington State Bank d/b/a Moonstone Bank, Temasek Holdings (Private) Limited, Softbank Vision Fund (AIV M2) L.P., Ribbit Capital, L.P., Altimeter Capital Management, LP, Multicoin Capital Management LLC, Tiger Global Management, LLC, Sino Global Capital Limited, Softbank Group Corp., Thoma Bravo, LP, Alan J. Lane.

F. Supp. 378, 380 (J.P.M.L. 1976) (excluding certain actions from consolidated pretrial proceedings to best promote efficiency).

## ARGUMENT

### I. THE RELATED ACTIONS, OR IN THE ALTERNATIVE, INSIDER AND BRAND AMBASSADOR ACTIONS, WARRANT CONSOLIDATION.

Pursuant to 28 U.S.C. § 1407(a), the JPML may transfer and consolidate cases where: (1) the cases "involv[e] one or more common questions of fact;" (2) transfer and consolidation or coordination will further "the convenience of parties and witnesses;" and (3) transfer and consolidation or coordination "will promote the just and efficient conduct of [the] actions."

**A. The Related Actions Involve Common Questions of Fact.**

At issue in the Related Actions is the common question of whether FTX's business practices guided from Miami, Florida, and those of related individuals and entities (insiders, celebrities, and accountants) that promoted the platform and the unregistered securities it offered and sold, were fraudulent, deceptive, or misleading. The few parties opposing centralization argue that the fraud and deception is only generally relevant to the issues in each case and that most of the facts and legal issues are unique. *See, e.g.,* ECF No. 56, at p. 10. This argument ignores, however, the fact that FTX's alleged fraudulent and deceptive business practices trigger the entire litigation and, to some extent at least, condition the various plaintiffs' right to recover in all the actions.

The nature and quantum of proof of the alleged fraud and deception necessarily depends on and varies with the legal theory of each case. Certainly, not all proof will be common to all actions. For example, the liability of the accountant defendants in the *Lam* cases may very well turn on operative facts not distinctly relevant to the claims against the Brand Ambassadors in the *Garrison* cases. Even so, it cannot reasonably be said that the alleged underlying fraud and

deception is entirely irrelevant or non-essential to the establishment of each of the stated cases. To the contrary, the allegations as drafted speak loudly; the facts of the fraud and deception are consistently pleaded in each of the complaints filed in the Related Actions.

While the facts surrounding each defendant's participation in the fraud may vary between defendants, they will share substantial background questions of fact concerning its nature and extent. This strong overlap is sufficient to require these cases to be assigned to one judge for coordinated pretrial proceedings. *See In re Penn Central Securities litigation*, 322 F. Supp. 1021, 1022–23 (J.P.M.L. 1971) ("Although the extent of the factual overlap is not certain, it is sufficient to require these bond cases to be assigned with the other cases for pretrial purposes.").[6]

### B. Centralization Will promote the Just and Efficient Conduct of the Related Actions and Will Be More Convenient for the Parties and Witnesses.

The parties opposing centralization argue that it will not be more convenient to the parties because it would likely impose onerous, unnecessary burdens on parties with little commonality across the various cases. Actually, the Related Actions present a prime example of the need which gave rise to enactment of §1407. Absent transfer and consolidation, there inevitably would be repetitious depositions of scores of witnesses, examinations of thousands of documents, and other myriad duplications of pretrial proceedings, resulting in a massive, needless waste of time and effort for numerous parties, witnesses, attorneys and judges involved. That waste would be

---

[6] The singular FTX Fraud—a massive conspiracy where all defendants in the Related Actions played their own role in a unified, common backdrop—differs from products liability cases like *In re Watson Fentanyl*, 883 F. Supp. 2d 1350 (J.P.M.L. 2012), where the Panel only consolidated actions brought against one manufacturer of Fentanyl patches and declined to consolidate as to competing manufacturers who utilized different manufacturing processes, or patent litigation like *In re Genetic Techs. Ltd. (%2C179) Pat. Litig.*, 883 F. Supp. 2d 1337 (J.P.M.L. 2012), where each case involved separate alleged instances of patent infringement by different defendants and patent litigation was largely an expedited proceeding requiring little, if any, judicial intervention.

exceptionally serious here, due to the unusually complex issues raised. Centralization will also serve the salutary purposes of forestalling conflicting rulings and streamlining pretrial procedure.

An equally compelling reason for centralization is the potential for conflicting, inconsistent class determinations by courts in different jurisdictions. *See In re Equity Funding Corp. of America Securities Litigation*, 375 F. Supp. 1378, 1385–86 (J.P.M.L. 1973) ("We have consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility for conflicting, inconsistent class determinations by courts of coordinate jurisdiction exists."). Except for the *Norris* and *Lucky D* cases, each of the other Related Cases contains Rule 23 class allegations based upon FTX's fraudulent and misleading business practices. The transferee court, with all claims and all parties before it, will have a clear picture of the scope and complexity of the litigation, essential to making class determinations. *In re Equity Funding Corp. of America Securities Litigation*, 375 F. Supp. at 1386 ("Because of the potential if not likely conflict of class action determinations, we think this litigation should be assigned to a single judge with the sole responsibility for making the class action determinations 'as soon as practicable. . . .'").

Further, centralization in the Southern District of Florida will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. That district encompasses Miami, Florida, FTX's headquarters. *See In re M3Power Razor Sys. Mktg. & Sales Pracs. Litig.,* 398 F. Supp. 2d 1363, 1365 (J.P.M.L. 2005) ("We are persuaded that the District of Massachusetts is an appropriate transferee forum for this litigation. [It] is a likely source of relevant documents and witnesses inasmuch as Gillete's headquarters are located there."). Three of the Related Actions, including *Garrison*, the first-filed action in the country, and *Norris*, the most procedurally advanced, are already pending there before The Honorable K. Michael Moore. And several of the other judges in the Southern District of Florida have similar experience handling

5

multi district litigation and highly sophisticated matters. Thus, centralization in this forum would permit the Panel to affect the §1407 assignment to an experienced transferee judge who can steer this litigation on a steady and expeditious course.

### C. Consolidation and Other Informal Solutions are Insufficient.

Defendants contend that the Panel should not centralize this litigation because there are alternatives to centralization "that offer the benefit of efficiency without imposing the burdens of centralization." [ECF No. 56, at p. 20]. However, the potential consolidation that Defendants suggest of the *Norris* and *Garrison* cases in Florida, and *Lam* cases in California is insufficient to address the risk of duplicative proceedings and inconsistent rulings.

Actions still would be proceeding independently in the Northern District of California, the Southern District of Florida, the District of New Jersey, and the Southern District of New York. There are significant efficiencies to be gained, for both the parties and the judicial system, by having only one court become acquainted with and oversee the complex and novel issues involved here. *See In re Bear Creek Techs., Inc., ('722) Patent Litig.*, 858 F.Supp.2d 1375, 1379-80 (J.P.M.L 2012) ("[C]entralization offers substantial savings in terms of judicial economy by having a single judge become acquainted with the complex patented technology and construing the patent in a consistent fashion (as opposed to having six judges separately decide such issues)."). Further, the possibility of using the "first filed" rule to stay subsequently filed, similar actions, or transfer motions and voluntary dismissals in favor of one district, remains far too speculative for the Court to conclude that they offer a reasonable alternative for addressing the multidistrict character of this litigation. *See In re Taasera Licensing, LLC, Patent Litigation*, MDL No. 3042, 2022 WL 3134132, at *1 (JUD. PANEL. MULTI. LIT. Aug. 3, 2022) ("[T]he outcome of the

pending motions to dismiss and/or to transfer remains too uncertain for us to conclude that they offer a reasonable prospect of eliminating the multidistrict character of this litigation.").

>        II. **THE RELATED CASES SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA.**

The Southern District of Florida is a proper choice for the transferee district and presents several unique advantages. The first-filed *Garrison* action is pending there,[7] as well as the most advanced *Norris* action. *See, e.g.*, *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("[T]here is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."); *Zampa v. JUUL Labs, Inc.*, No. 18-25005-CIV, 2019 WL 1777730, at *4 (S.D. Fla. Apr. 23, 2019) (transferring to forum "given the advanced procedural posture of the consolidated action" pending there); *see also In re Cutter Lab'ys, Inc. "Braunwald-Cutter" Aortic Heart Valve Prod. Liab. Litig.*, 465 F. Supp. 1295, 1296 (J.P.M.L. 1979) (finding "preferable forum" was where the most "advanced" actions were pending, although "many relevant witnesses and documents" were in other fora).

Both cases are materially more advanced than the new cases pending in the Northern District of California, where a recent motion for consolidation and for interim lead counsel was denied as premature, because many Defendants had yet to be served and none had responded to the motion.[8] *See, e.g.*, *Lam*, 3:22-cv-07336-JSC, ECF No. 28. *Norris* was removed from Florida

---

[7] Contrary to claims in one Opposition Brief, Dkt. 61 at 3–4, *Garrison* was the first matter filed, on November 15, 2022, in the Southern District of Florida. *Kavuri v. Bankman-Fried et al.*, 22-cv-23817 (S.D. Fla.), followed on November 21, 2022, and *Podalsky et al. v. Bankman-Fried et al.*, 22-cv-23983 (S.D. Fla.), on December 7, 2022. After Plaintiffs informally consolidated the suits through an amended complaint, Judge Bloom transferred *Podalsky* to Judge Moore, who consolidated it for all purposes with *Garrison*, which remained open and pending on his docket. *See Podalsky*, ECF No. 7 ("[*Garrison*] and [*Podalsky*] have common questions of fact and consolidation is appropriate. . . Plaintiff shall file an amended complaint in [*Garrison* by December 16, 2022.]"). Plaintiffs complied, and *Garrison* remains the first-filed, lead action on Exhibit A.
[8] Of the 18 Defendants in *Garrison*, only O'Neal, who is evading service, remains unserved.

state court and has a motion for remand fully briefed and pending, as well as a motion for partial summary judgment that is ready to be renewed and promptly litigated once a forum is determined.

In addition to the work that Plaintiffs' Counsel in *Garrison* and *Norris* have done to advance those matters on the merits, (unlike the work done by counsel in the in California actions, which primarily related to their efforts to seek interim lead counsel status), they have also (1) been in communication with Bankman-Fried's attorneys, who accepted service of the *Garrison* complaint; (2) been in communication with the prosecutors in the Southern District of New York regarding coordinating these proceedings; (3) been in communication and preliminary settlement discussions with certain FTX Insiders; (4) served discovery in *Norris*, including third party subpoenas, on common merits issues; (5) begun coordinating a Joint Scheduling Conference with Defendants; and (6) brought this Petition to coordinate *all* civil litigation, now spread across the country, arising from the collapse of FTX in an orderly and efficient manner.

Finally, despite multiple Defendants and theories, FTX is the common nexus amongst all cases, and its headquarters, the Southern District of Florida, remains a logical choice. Regardless of the chosen location, many parties will undoubtedly have to travel at times, but modern technology and transportation has all but negated any geographic preference resulting therefrom.[9]

Moreover, "since the parties and witnesses usually do not personally participate in pretrial conferences or hearings, it is unlikely that [the Defendants] or any of [the] witnesses will ever have to travel to the transferee forum. And, in any event, their depositions will probably occur in proximity to where they reside." *In re Radiation Incident at Washington, D. C. on Apr. 5, 1974,*

---

[9] *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996) (holding that "modern methods of transportation and communication" "significantly" reduced any burden occasioned by litigating outside of Michigan) (citations and quotation marks omitted); *R & R Games, Inc. v. Fundex Games, Ltd.*, No. 8:12-CV-01957-T-27, 2013 WL 784397, at *5 (M.D. Fla. Mar. 1, 2013).

400 F. Supp. 1404, 1406 (J.P.M.L. 1975); *see also In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 173 F. Supp. 2d 1377, 1379 (J.P.M.L. 2001) ("[S]ince Section 1407 transfer is for pretrial proceedings only, there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise. Furthermore, the judicious use of liaison counsel, lead counsel and committees of counsel will eliminate the need for most counsel ever to travel to the transferee district.") (internal citations omitted). And all cases pending in the Northern District of California have been related by the Court. *See Lam*, Case No. 3:22-cv-07336-JSC, ECF No. 28.

Likewise, Federal courts are adept at handling claims that arise under the laws of other jurisdictions, so the existence of both Florida and California state law claims need not sway the Panel's choice. *Fruitstone v. Spartan Race Inc.*, 464 F. Supp. 3d 1268, 1284 (S.D. Fla. 2020). No Respondent mentions how the comparative docket statistics favor Florida, given the Northern District of California's significantly heavier caseload. MDLs are sent to districts that "(i) [are] not currently overtaxed with other multidistrict dockets, and (ii) possess[] the necessary resources to be able to devote the substantial time and effort to pretrial matters that [a] complex docket is likely to require." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 173 F. Supp. 2d at 1380. While the Northern District of California currently has 17 MDLs pending, "covering what appears to be thousands of individual cases," [ECF No. 61, at 19], the Southern District of Florida only has 9, many of which are smaller MDLs or are in the process of winding down.[10] In addition to all other factors favoring Florida, it is "the best forum" for this MDL because it has the available time and resources to manage the litigation, particularly when, as explained in

---

[10] Pending MDLs By District as of February 16, 2023, JPML.USCOURTS.GOV, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-February-16-2023.pdf.

Petitioners' initial Memorandum, ECF No. 1-2 at 12–15, there are Judges well-versed in the issues raised in these actions due to the substantive issues raised before them who are either not currently presiding over any MDLs, are presiding over a smaller MDL, or are in the process of winding down an MDL. *See In re: Bank of Am. Wage & Hour Emp. Pracs. Litig.,* 706 F. Supp. 2d 1369, 1372 (J.P.M.L. 2010) (finding "best forum" to be one that "has docket conditions that are significantly more favorable than the other primary contenders for th[e] litigation").

Petitioners do not dispute that *any* of the Judges referenced in the Parties' submissions are exceptionally qualified to oversee this MDL. However, the Southern District of Florida is the more appropriate forum for this MDL, particularly considering that, in addition to having the time and resources to preside over this MDL, some of its judges, "through [their] supervision of the [] actions now pending there and [the] prior related action[s], ha[ve] already become familiar with the issues involved in this litigation," including those raised in both the FTX litigation and the similar Voyager Digital Crypto litigation (The Honorable Roy K. Altman), which raises many of the same complex questions surrounding these very similar, unregistered, and largely unregulated cryptocurrency trading platforms, ECF No. 1-2 at 12–15, "and [are] therefore in the best position to supervise it to a just and expeditious conclusion." *In re Multi-Piece Rim Prod. Liab. Litig.,* 464 F. Supp. 969, 975 (J.P.M.L. 1979).[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Panel transfer and consolidate or coordinate all FTX Related Actions to the Southern District of Florida for pretrial purposes.

---

[11] *See also In re C.H. Robinson Worldwide, Inc., Overtime Pay Litig.,* 502 F. Supp. 2d 1347, 1348 (J.P.M.L. 2007) ("the transferee judge to whom we are assigning this litigation has developed a familiarity with the issues, parties, and counsel involved in these actions through presiding over two related actions for the past five years").

*In re: FTX Cryptocurrency Exchange Collapse Litigation*

Dated: March 17, 2023　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: */s/ Adam Moskowitz*
　　　　　　　　　　　　　　　　　　　Adam M. Moskowitz
　　　　　　　　　　　　　　　　　　　Joseph M. Kaye
　　　　　　　　　　　　　　　　　　　**THE MOSKOWITZ LAW FIRM, PLLC**
　　　　　　　　　　　　　　　　　　　2 Alhambra Plaza, Suite 601
　　　　　　　　　　　　　　　　　　　Coral Gables, FL 33134
　　　　　　　　　　　　　　　　　　　Telephone: (305) 740-1423
　　　　　　　　　　　　　　　　　　　adam@moskowitz-law.com
　　　　　　　　　　　　　　　　　　　joseph@moskowitz-law.com

　　　　　　　　　　　　　　　　　　　By: */s/ David Boies*
　　　　　　　　　　　　　　　　　　　David Boies
　　　　　　　　　　　　　　　　　　　Alexander Boies
　　　　　　　　　　　　　　　　　　　Brooke Alexander
　　　　　　　　　　　　　　　　　　　**BOIES SCHILLER FLEXNER LLP**
　　　　　　　　　　　　　　　　　　　333 Main Street
　　　　　　　　　　　　　　　　　　　Armonk, NY 10504
　　　　　　　　　　　　　　　　　　　Phone: (914) 749–8200
　　　　　　　　　　　　　　　　　　　dboies@bsfllp.com
　　　　　　　　　　　　　　　　　　　aboies@bsfllp.com
　　　　　　　　　　　　　　　　　　　balexander@bsfllp.com

　　　　　　　　　　　　　　　　　　　By: */s/ Stephen Neal Zack*
　　　　　　　　　　　　　　　　　　　Stephen Neal Zack
　　　　　　　　　　　　　　　　　　　**BOIES SCHILLER FLEXNER LLP**
　　　　　　　　　　　　　　　　　　　100 SE 2nd St., Suite 2800
　　　　　　　　　　　　　　　　　　　Miami, FL 33131
　　　　　　　　　　　　　　　　　　　Office: 305-539-8400
　　　　　　　　　　　　　　　　　　　szack@bsfllp.com

　　　　　　　　　　　　　　　　　　　**By:** */s/Jose M. Ferrer*
　　　　　　　　　　　　　　　　　　　Jose M. Ferrer
　　　　　　　　　　　　　　　　　　　**MARK MIGDAL & HAYDEN**
　　　　　　　　　　　　　　　　　　　80 S.W. 8th Street, Suite 1999
　　　　　　　　　　　　　　　　　　　Miami, Florida 33130
　　　　　　　　　　　　　　　　　　　Telephone: (305) 374-0440
　　　　　　　　　　　　　　　　　　　jose@markmigdal.com
　　　　　　　　　　　　　　　　　　　eservice@markmigdal.com

　　　　　　　　　　　　　　　　　　　*Co-Counsel for Petitioners, Edwin Garrison, Gregg Podalsky, Skyler Lindeen, Alexander Chernyavksy, Sunil Kavuri, Gary Gallant, and David Nicol*